560 A.2d 199

**Deborah F. ROCK, Appellee,**

v.

**James S. ROCK, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 25, 1989.

Filed June 12, 1989.

---

128

Joel F. Bigatel, Philadelphia, for appellant.

Madeline H. Lamb, West Chester, for appellee.

Before BROSKY, McEWEN,* and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

This is an appeal from an order of the Court of Common Pleas of Delaware County directing appellant to: (1) pay

---

* McEwen, J., did not participate in the consideration or decision of this case.

$180.00 per week for the support of one child, $100.00 per week for spousal support, $10.00 per week toward arrears; and (2) maintain medical insurance and pay all of his child's unreimbursed medical expenses.

The Rocks were married on May 21, 1980, and separated in February of 1988. Mrs. Rock, accompanied by her and Mr. Rock's daughter, Jamie Cooper Rock, age 8, left the marital residence. On February 25, 1988, Mrs. Rock filed a complaint for support. A conference was held, after which a temporary agreement was entered. The agreement provided that Mr. Rock would pay support in the amount of $125.00 per week.

Following a hearing before a support master, an order of child and spousal support was entered. Timely exceptions were filed, and a *de novo* hearing was held before the Honorable John A. Reilly during which the parties introduced numerous exhibits regarding their respective incomes and expenses. In response, the court entered an order directing Mr. Rock to pay child support in the amount of $180.00 per week, spousal support in the amount of $100.00 per week, $10.00 toward arrears per week, and continued medical coverage and payment of all of Jamie's unreimbursed medical expenses.

Thereafter, Mr. Rock filed the instant appeal. Mrs. Rock then filed a petition to quash that part of the appeal relating to spousal support. Following the grant of Mrs. Rock's petition, Mr. Rock filed a petition for reconsideration of the court's order which quashed part of his original appeal. Mr. Rock's petition was granted, and Mrs. Rock's petition to quash was denied.

On appeal, Mr. Rock contends that the trial court erred in: (1) ordering him to pay $100.00 per week for spousal support since Mrs. Rock failed to meet her burden of establishing adequate legal cause for vacating the marital residence; (2) failing to assign Mrs. Rock an earning capacity commensurate with her abilities; (3) calculating his net earnings; and (4) calculating the child's reasonable needs,

as it is based upon calculations on speculative future projections rather than present actual expenses.

Initially, Mr. Rock alleges that due to Mrs. Rock's failure to meet her burden of demonstrating good cause for vacating the marital residence, the trial court erred in ordering him to pay spousal support. Specifically, Mr. Rock alleges that Mrs. Rock's testimony, which indicated that she left the marital residence due to his drinking problem and resultant erratic behavior, was insufficient to sustain her burden of proof. Further, Mr. Rock contends that Mrs. Rock's claims were laden with generalities regarding the detriment to her physical and emotional well-being and, as such, remained unsubstantiated.

This Court may reverse a support order only if it finds that the order cannot be sustained on any valid ground. *Shovlin v. Shovlin*, 318 Pa.Super. 516, 465 A.2d 673 (1983). As such, absent an abuse of discretion or sufficient evidence to sustain the support order, this Court will not interfere with the broad discretion afforded the trial court. *Boni v. Boni*, 302 Pa.Super. 102, 448 A.2d 547 (1982). Further, the assessment of the credibility of witnesses is within the sole province of the trial court. *Kembel v. Schlegel*, 329 Pa.Super. 159, 478 A.2d 11 (1984).

A wife seeking support following a nonconsensual, voluntary vacation from the marital home has the burden of establishing that her husband's conduct justified her in leaving the marital home. *Larkin v. Larkin*, 262 Pa.Super. 294, 396 A.2d 761 (1978). The wife, however, need not establish facts which would entitle her to a divorce. *Id.* Although this issue must be reviewed on a case-by-case basis, precedent is nevertheless helpful.

In *Larkin, supra*, this Court summarized applicable case law as follows:

In *Commonwealth ex rel. Loosley v. Loosely*, 236 Pa.Super. 389, 345 A.2d 721 (1975), we held that where the testimony established that the husband knew the wife was being treated for a psychiatric disorder, yet persisted in sleeping in a separate bedroom, even though this made

her nervous, and also exchanged bitter words with her and told her on numerous occasions that he wanted a divorce, the wife had reasonable cause to leave. In *Commonwealth ex rel. Ross v. Ross*, 206 Pa.Super. 429, 213 A.2d 135 (1965), a support order was upheld where the wife testified that she left her husband because he would curse her and argue with her incessantly, and that if she tried to escape him by sleeping in their second bedroom, he would follow her, pull the pillows and blankets from her, and try to drag her out of bed. In *Commonwealth ex rel. Keeth v. Keeth*, 223 Pa.Super. 96, 289 A.2d 732 (1972), we held that where the husband was away from home an entire weekend, and the wife found him in his car with another woman, and the husband slapped the wife after she slapped the woman, the wife was entitled to support from her husband after he permanently moved out of their common abode. In *Commonwealth ex rel. Lebowitz v. Lebowitz*, 227 Pa.Super. 593, 307 A.2d 442 (1973), a wife was held to have had adequate legal cause for leaving her husband when he refused to allow her to be a practicing Jehovah's Witness in their house. . . .

On the other hand, we have denied petitions for support where the wife left the husband because he refused to give her two thousand dollars, *Commonwealth ex rel. Coleman v. Coleman*, 184 Pa.Super. 256, 133 A.2d 307 (1957); where the wife left, even though her husband loved her, because members of the husband's family complained of her race, *Commonwealth ex rel. Pitucci v. Pitucci*, 200 Pa.Super. 591, 189 A.2d 912 (1963); where the wife left because her husband criticized her house work (and she was also seeing another man), *Commonwealth ex rel. Bergwerk v. Bergwerk*, 228 Pa.Super. 190, 323 A.2d 243 (1974); and where the wife's reasons for leaving were expressed in generalities, such as the fact that her husband "went into temper tantrums," charged her with infidelity, and complained of her "incapacity to do for him," *Commonwealth ex rel. Van Wagenen v. Van Wagenen*, 167 Pa.Super. 354, 74 A.2d 740 (1950). . . .

*Larkin, supra,* 262 Pa.Superior Ct. at 296–98, 396 A.2d at 763–764.

In the instant case, Mrs. Rock testified that Mr. Rock's addiction to alcohol caused him to exhibit frightening and erratic behavior. Due to this behavior, Mrs. Rock stated that she feared for the emotional and physical well-being of Jamie, the couples' child, and herself. While Mrs. Rock's testimony may have been somewhat general in nature, it still serves to support the trial court's determination that she had legal cause to vacate the residence. Clearly, Mr. Rock's alcoholism coupled with his erratic and frightening behavior could reasonably have forced Mrs. Rock out of the marital home. Accordingly, since the trial court was in the best position to assess the credibility of Mrs. Rock's testimony, and since Mr. Rock offered no evidence to refute the allegations, the trial court did not abuse its discretion in ordering Mr. Rock to pay spousal support.

Next, Mr. Rock contends that the trial court erred in failing to assign Mrs. Rock an earning capacity commensurate with her abilities. Specifically, he contends that Mrs. Rock holds an A.B.S. teaching degree in secondary English education and, as such, has a higher earning capacity than was determined. Mr. Rock also argues that Mrs. Rock would be capable of maintaining a thirty-hour work week without losing much time with her daughter. In support, he contends that Mrs. Rock would be forced to spend only seven additional hours away from Jamie and would only incur an additional $43.75 in child care per week.

In reviewing an order of support, this Court will not reverse the decision of the trial court absent an abuse of discretion. *Machen v. Machen,* 278 Pa.Super. 135, 420 A.2d 466 (1980). Further, it is well established that both parents are equally responsible to support their children, and the extent of their respective support obligations is gleaned from their earning capacity and ability. *DeMasi v. DeMasi,* 366 Pa.Super. 19, 530 A.2d 871 (1987). As such, in determining a parent's ability to provide support, the trial court primarily focuses on earning capacity rather than actual

earnings. *Akers v. Akers*, 373 Pa.Super. 1, 540 A.2d 269 (1988). In making this determination, the trial court should also consider that a parent may not be penalized for having remained in the home for the purpose of nurturing young children instead of obtaining employment outside of the home. *Butler v. Butler*, 339 Pa.Super. 312, 488 A.2d 1141 (1985).

Instantly, after a comprehensive fact-finding process, the trial court determined the following: Mrs. Rock is a college graduate with a secondary-education degree in English; she is not certified, however, to teach. At the time Mr. and Mrs. Rock met, she was a waitress. During most of their marriage, Mrs. Rock did not work outside the home but became involved in various organizations, many of which were church related. Shortly before the parties separated, the Rocks agreed that Mrs. Rock would go back to school full-time to begin a nursing program.

Currently, after arranging her schedule to enable her to take Jamie to and from school, Mrs. Rock works approximately sixteen hours a week at a nursery school and attends classes for five hours per week. Further, Mrs. Rock began working for a fence company on a commission basis and would be earning money by house sitting. In utilizing this information, the court determined that Mrs. Rock's monthly net income was $230.00. With regard to her earning capacity, however, the court determined that it was $400.00 per month.

In making this determination, the court weighed Mrs. Rock's desire to spend "quality time" with her daughter and the fact that she should not be penalized for having stayed at home for several years while nurturing the parties' young child, with her ability and willingness to maximize her income. Utilizing this information, the court determined that while Mrs. Rock should not be forced to incur additional day care expenses, she is not precluded from obtaining at least minimum-wage employment during the hours her daughter is in school.

Upon review, it is clear that the trial court did not err in making its determinations. The court comprehensively re-

viewed and weighed the applicable factors before making its determinations. Further, the court focused on Mrs. Rock's earning capacity, not her current earnings. As such, this Court does not hesitate in affirming the decision of the trial court as to Mrs. Rock's ability to contribute to the support of her child.

Next, Mr. Rock alleges that the trial court erred in calculating his net earnings. Specifically, he contends that the trial court's reliance on his 1987 tax return resulted in a speculative and inaccurate reflection of his net earnings, since the return included a one-time severance pay for his 1986 income. Further, Mr. Rock contends that the trial court's determination of his net income must be reduced since his 1987 tax return demonstrates that his net monthly income was significantly lower than was calculated by the trial court.

As has been previously stated, appellate review of support orders is very narrowly defined. *Urban v. Urban*, 298 Pa.Super. 224, 444 A.2d 742 (1982). Accordingly, this Court will not interfere with a determination of the trial court absent an abuse of discretion. *Id.* Further, it is within the sole province of the trial judge, sitting without a jury, to assess the credibility of the witnesses and to weigh their testimony. *Allegheny County v. Monzo*, 509 Pa. 26, 500 A.2d 1096 (1985).

Initially, Mr. Rock alleges that part of his 1987 income constituted a one-time severance pay. Upon review, it is clear that Mr. Rock testified with regard to this allegation, but offered no additional evidence to support this allegation. As such, the trial court was forced to judge Mr. Rock's credibility and decide the issue accordingly. Since credibility determinations are within the sole province of the trial court and there exists no evidence which would hint at an abuse of discretion, this Court will not disturb the trial court's finding.

Mr. Rock also alleges that the trial court erred in interpreting his 1987 tax return. This Court disagrees. The trial court correctly took Mr. Rock's total income as was exhibited by his tax return, added depreciation, and then

subtracted the federal, state, and local taxes. There is nothing in the record to indicate that the trial court erred in performing its calculations. As such, Mr. Rock's claim is meritless. Further, Mr. Rock's additional, interrelated allegations with regard to the trial court's failure to consider certain other expenses are also meritless as they remain unsupported by the record.

Finally, Mr. Rock contends that the trial court erred in calculating the child's reasonable needs, since they are based on speculative future projections rather than present actual expenses. Mr. Rock contends that the law mandates that the calculation of reasonable needs must be based on circumstances as they exist at the time of the hearing rather than on speculation as to what may occur in the future.

 In determining support payments, the trial court has ample discretion and its decision will not be disturbed on appeal unless it has clearly abused that discretion. *Bower v. Hoover*, 370 Pa.Super. 321, 536 A.2d 426 (1988). In calculating child support, the trial court must consider both the *Melzer* formula and county support guidelines. *Shutter v. Reilly*, 372 Pa.Super. 251, 539 A.2d 424 (1988). In determining the amount of child support, reasonable expenses are not limited to the bare necessities of life, but are inclusive of those articles which are reasonably necessary for the proper and suitable maintenance of the child in light of her and her parents' life style. *Id.* Also included in child support may be reasonable mortgage payments, property taxes, insurance costs, and utility fees as well as the cost of maintaining an automobile. *Id.* Support orders are for the purpose of providing present needs, and orders providing for the accumulation of funds for future needs are improper. *Commonwealth ex. rel. Giamber v. Giamber*, 255 Pa.Super. 111, 386 A.2d 160 (1978).

 Instantly, the record shows that the trial court comported with both the *Melzer* formula pursuant to *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984), and the county guidelines. The record further shows that at the time of this appeal, Mrs. Rock and Jamie are residing at the

home of a friend of Mrs. Rock's. Her living situation is temporary, and her need to find housing is a present and not a future concern. As such, the trial court did not err in granting support for rental payments and related expenses. Further, there is no evidence in the record to support Mr. Rock's allegation that the rental and related expenses projected by Mrs. Rock are unreasonable. Similarly, with regard to the automobile expenses, the child's clothing and food expenses, and the child's miscellaneous expenses, the same result is warranted since the expenses are reasonable and are in accordance with the county guidelines and the *Melzer* formula.

Mr. Rock also contends that the after-school expenses for child care should be eliminated since Mrs. Rock's earning capacity was calculated on a minimum-wage basis so that she would not be forced to incur the cost of child care. Since child care is considered to be a reasonable expense, *Funk v. Funk,* 376 Pa.Super. 76, 545 A.2d 326 (1988), however, the trial court did not abuse its discretion in incorporating it into the child's expenses. In sum, the record clearly supports the trial court's determinations and demonstrates that the trial court thoroughly considered the appropriate factors in making said determinations.

Accordingly, this Court affirms the order of the trial court.