J-S30039-18

## NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37

| | | |
|---|---|---|
| JUDITH A. FOWLER, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BRUCE A. FOWLER, | : | |
| | : | |
| Appellant | : | No. 73 WDA 2018 |

Appeal from the Order December 13, 2017
in the Court of Common Pleas of Fayette County
Domestic Relations at No(s): 375 DR 2017

BEFORE:    BENDER, P.J.E., STABILE, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:    **FILED APRIL 16, 2019**

Bruce A. Fowler (Husband) appeals from the December 13, 2017 spousal support order[1] requiring him to pay a support obligation to Judith A. Fowler (Wife).  Upon review, we reverse.

Husband and Wife were married on or about October 29, 1998[2] and separated on July 16, 2017.  Following a verbal dispute, Wife left the marital home on July 16, 2017.  On August 21, 2017, Wife filed for spousal support.

_____

[1] As of the date of the spousal support order, neither Husband nor Wife had filed for divorce.  **See** N.T., 12/11/2017, at 3, 9, 14, 21.  **Hoffman v. Hoffman**, 762 A.2d 766, 769 (Pa. Super. 2000) (A "spousal support order is appealable where no divorce action was pending at the time the support order was entered.").

[2] When Wife filed for support, she indicated they were married on this date, but Wife later testified they were married on October 31, 1998.  Complaint for Support, 8/21/2017, at 1; N.T., 12/11/2017, at 3.

_____

*Retired Senior Judge assigned to the Superior Court.

The trial court ordered Husband to appear on September 11, 2017 before a domestic relations conference officer for a conference on Wife's support complaint. Order, 8/22/2017, at 1. While the record is unclear as to what happened, it appears the parties attended said conference, and the conference officer recommended Wife's complaint for support be denied. **See** N.T., 12/11/2017, at 9-10, 25. Thereafter, the trial court dismissed without prejudice Wife's complaint for support due to there being "no entitlement to spousal support established." Order, 9/18/2017.

Wife then filed a demand for a *de novo* hearing before the trial court, claiming that Husband had lied at the conference. Following the December 11, 2017 *de novo* hearing, the trial court determined that Wife had adequate legal cause to leave the marital home due to her mental illness. Trial Court Opinion, 2/27/2018, at 5; N.T., 12/11/2017, at 26. The trial court granted Wife's request for spousal support, but ordered the support to begin as of the date of the hearing, not the filing of Wife's petition. Final Order of Court, 12/20/2017, at 1; N.T., 12/11/2017, at 26. The trial court entered its final order on December 20, 2017, effective December 11, 2017, which determined Husband's monthly net income to be $3,626.67 and Wife's monthly net income to be zero dollars, and directed Husband to pay $1,500[3]

---

[3] The amount of Husband's monthly support obligation is unclear from the record. The first page of the order sets Husband's obligation at $1,500 per month due forthwith, and sets arrears at $1,001.79 due in full immediately. *(Footnote Continued Next Page)*

- 2 -

J-S30039-18

per month in spousal support and $1,001.79 in arrears.[4]  Husband timely

filed a notice of appeal on January 5, 2018.  Both Husband and the trial

court complied with Pa.R.A.P. 1925.[5]

Husband raises the following issue on appeal:

Whether the trial court erred in awarding spousal support to
[Wife] when the court determined that [Wife] was not entitled to
spousal support from the filing of the complaint for support on
August 21, 2017, and then awarded spousal support from the
date of the *de novo* hearing on December 11, 2017[?]

Husband's Brief at 4 (suggested answer omitted).

We bear in mind the following.

Our standard of review in spousal support cases is well settled:
this Court must determine whether the trial court has abused its
discretion.  Absent an abuse of discretion or insufficient evidence
to sustain the support order, this Court will not interfere with the
broad discretion afforded the trial court.  An abuse of discretion

---

*(Footnote Continued)* ────────────

Final Order of Court, 12/20/2017, at 1.  On the second page of the same
order, Husband's obligation is set at $1,451 per month for current support,
and $49 per month in arrears.  ***Id.*** at 2.

[4] We are unable to determine how this arrearages number was calculated.

[5] Before reaching the merits of Husband's appeal, we remanded this case to
address an issue regarding Wife's representation by counsel.  ***Fowler v.
Fowler***, 195 A.3d 979 (Pa. Super. 2018) (unpublished memorandum).
Based on the record, it appeared that Wife had been represented by Ricardo
J. Cicconi, Esquire at the *de novo* hearing, but on appeal, he stated to this
Court that he did not represent Wife in his capacity as Domestic Relations
Solicitor of Fayette County Court of Common Pleas.  By order dated August
27, 2018, the trial court granted Attorney Cicconi's motion to withdraw as
counsel.  Wife has had ample opportunity to file a *pro se* brief or to obtain
counsel to file a brief on her behalf in this Court, but she has not done so.
Thus, we will proceed.

- 3 -

is not merely an error of judgment, but rather a determination that the trial court has misapplied the law, or has exercised judgment which is manifestly unreasonable, or is the product of partiality, prejudice, bias or ill will as demonstrated by the evidence of record.

***Speaker v. Speaker***, 183 A.3d. 411, 415-16 (Pa. Super. 2018) (internal citations and quotation marks omitted). "[T]he assessment of the credibility of witnesses is within the sole province of the trial court." ***Hoffman***, 762 A.2d at 770 (citation omitted).

In the instant case, Husband contends Wife is not entitled to spousal support because she unilaterally left their home without justification. Husband's Brief at 11.

The trial court summarized the parties' testimony at the *de novo* hearing as follows.

Wife [] testified that after 19 years of marriage[,] she left the marital residence on July 16, 2017, to live at her parents' home. Wife testified that she has no source of income. She previously volunteered as a firefighter and worked as a department manager at Kmart[,] with the paid job ending in 2004 when the store downsized. Wife [wa]s receiving food stamps and she ha[d] made application for SSI for psychiatric problems but ha[d] not yet received a determination. Wife ha[d] not filed for divorce because she [could] not afford to do so.

Wife testified that she and Husband were driving to church when Husband started screaming at her, that she exited the vehicle and began walking home; Husband picked her up and told her that she needed to call her dad because she needed somewhere else to live. According to Wife, Husband will not permit her to return to the marital home or to get her things from there.

- 4 -

Husband [] testified that he was injured while working as a mechanic for Advanced Disposal. He tore a ligament and ripped [his] ACL[,] which damaged a nerve[. He] has no feeling in his right hand and arm[,] rendering him incapable of performing his job as a mechanic. Husband receive[d] compensation weekly in the amount of $834.00.

Husband testified that he did not ask Wife to leave the marital residence, that Wife was responsible for the physical act of paying the bills and that when she left, Husband learned the mortgage was three months['] delinquent. Husband testified that after wife left[,] he found 27 gambling apps on her computer that she had entered their debit card to fund. According to Husband, Wife was not cleaning, cooking, or paying the bills for the home despite hi[s] providing her the money to do so. Husband testified that he drove Wife to Glass Cap Federal Credit Union, that Wife would go inside and tell Husband that she made the mortgage payment, but that he later learned she did not actually pay the mortgage for three months.

Husband testified that he and Wife were on their way to church in July 2017 when the car tire spun in gravel and Wife began yelling and cursing at him. Wife jumped out of the car, and according to Husband, he turned around and picked her up, promising to remain silent so that she would get back in the car, and that he took her home without incident[,] telling her that he would go to church and leave the house for the day. When Husband returned home, Wife was gone. Husband went to Wife's parent's [*sic*] house the next day asking her to return home, [] which she refused.

Husband testified that Wife later returned to the marital home several times where they would talk and Wife would leave with a "truckload of stuff of hers," disputing that he did not permit her to take her things. Husband testified that he had visited Wife's doctor, that he was told she [had been diagnosed with mental illnesses], and that Wife became violent with the medicine she was prescribed.[6] Upon inquiry of the [trial court], Husband testified that he does not welcome Wife back to the

---

[6] Husband testified about an incident where Wife attacked a man in public, and Husband had to restrain her. N.T., 12/11/2017, at 23.

marital home because he does not want to be alone with Wife since she threatened that she could just say Husband had raped her and that he would "go to jail."

Trial Court Opinion, 2/27/2018, at 1-3 (citations to the record and some quotation marks omitted). At the conclusion of the hearing, the trial court found that Wife was justified in leaving the marital residence based upon her mental illness and ordered Husband to pay support. N.T., 12/11/2017, at 26. In its opinion, the trial court found as follows.

> [F]ollowing a verbal altercation with Husband[,] Wife left the marital residence[]. Wife suffers from, according to Husband and believed by the [trial court], a myriad of mental illnesses … [and one of her medications makes her act violently]. Because of Wife's mental condition she is not welcomed by Husband to live in the marital residence. The [trial court] holds that Wife's mental illness provided adequate legal cause for her leaving the marital home and that such cause was of no fault to Wife. Upon this determination, the [trial court] ordered Husband to financially support Wife.

Trial Court Opinion, 2/27/2018, at 4-5.

To obtain spousal support, a petitioner has the burden of establishing that the spouse's conduct provided the petitioner with justification to leave the marital home. *Brotzman-Smith v. Smith*, 650 A.2d 471, 474 (Pa. Super. 1994). "A [petitioner] will be denied spousal support if he or she voluntarily withdrew from the marital home without 'adequate legal cause.'" *Id.* (citations omitted). As this Court has explained,

> the phrase adequate legal cause for leaving is not subject to exact definition. It must be interpreted on the facts of each case. A spouse who over a period of time suffers psychological oppression may be harmed as much as a spouse who over a

- 6 -

period of time suffers physical injury. The law must recognize this harm and not force the oppressed spouse to remain in the unhappy environment in order to be entitled to support. On the other hand, the law should not impose on a spouse the duty of support where his or her mate departs the marital residence maliciously or casually on a whim or caprice.

*Clendenning v. Clendenning*, 572 A.2d 18, 21 (Pa. Super. 1990). "The party who voluntarily left the marital residence does not have to establish adequate grounds for divorce in order to sustain a right to spousal support. However, a mere allegation that cohabitation is unbearable, unsupported by facts or reasons, is not sufficient." *Brotzman-Smith*, 650 A.2d at 474 (citations and quotation marks omitted).

After careful review, we are unable to find, nor has Wife or the trial court presented us with, any case law addressing whether a petitioner's mental illness, in and of itself, constitutes adequate legal cause to leave the marital home. In a Berks County trial court case, the Honorable Elizabeth Ehrlich wrote that the trial court "cannot require a husband to pay support merely because wife may have been mentally ill and has chosen to live apart from him, without any justification based on his behavior." *Noll v. Noll*, Nos. 90-0342-00, 90-1977-00, 1994 WL 906704 (Berks Co. Pa. Com. Pl. 1994).[7] In that case, the wife left the marital home due to a psychiatric

---

[7] We recognize "that decisions of the Courts of Common Pleas are not binding precedent for the appellate courts, but may be considered for their persuasive authority." *Huber v. Etkin*, 58 A.3d 772, 778 n.5 (Pa. Super. 2012).

- 7 -

hospitalization and did not return to the home after her release from the hospital. *Id.* The trial court held that where there is no evidence that a petitioner's mental illness prevented him or her from returning to the martial home, and where a petitioner fails to show he or she did not return due to the spouse's conduct, the petitioner is not entitled to spousal support. *Id.*

We find the reasoning of Judge Ehrlich to be persuasive, and we conclude that Wife has not met her burden of establishing that Husband's conduct provided justification for Wife to leave the marital home. *See* ***Brotzman-Smith***, 650 A.2d at 474. While the record shows that Wife suffers from mental illness, Wife has not presented any evidence to show that she was subjected to "psychological oppression" or other conduct by Husband to justify her departure. ***See Clendenning***, ***supra***. The record demonstrates that Husband tried to help Wife with her mental illness; he accompanied her to doctor's appointments and took over the physical act of paying bills, which had been Wife's responsibility, when she told him she was having a hard time doing so due to her mental illness. N.T., 12/11/2017, at 17-20, 22-23. The record shows that Wife left "casually on a whim or caprice," after she and Husband had an argument on their way to church.[8]

_____

[8] The record indicates that, the day after Wife left, Husband sought her out at the home of Wife's father, and requested Wife to return to the martial residence. N.T., 12/11/2017, at 17, 21. Further, Wife returned to the home on five occasions to retrieve her belongings; Husband did not refuse her entry on these visits, and in fact, the two of them talked about a trial
*(Footnote Continued Next Page)*

Thus, Husband does not have a duty of support. **See id.** Accordingly, we conclude that the trial court erred when it held that Wife's mental illness, as opposed to Husband's behavior, demonstrated adequate legal reason to leave the marital residence.

In light of the foregoing, we hold the trial court abused its discretion in misapplying the law when it granted Wife spousal support. We therefore reverse the trial court's December 13, 2017 order.

Order reversed.


Judgment Entered.


Joseph D. Seletyn, Esq.

Prothonotary



Date: 4/16/2019


*(Footnote Continued)* ————————

separation and working on their marriage during these visits. **Id.** at 21. It was not until after Wife threatened to accuse Husband falsely of raping her that he told her he did not want her to return home unless she had someone else with her. **Id.** at 24.